**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action File No.** |
| **SEAN KELLY; LION'S SHARE & ASSOCIATES, INC; LIONSSHARE TAX SERVICES, LLC; AND LION'S SHARE FINANCIAL OF EAST COBB, INC.,** | |
| **Defendants.** | |

## <u>COMPLAINT</u>

Plaintiff, the United States Securities and Exchange Commission ("Commission" or "SEC") alleges the following:

### OVERVIEW

1.    This matter involves an ongoing fraudulent scheme by Sean Kelly, a registered stock broker, and various entities that he operates under the "Lion's Share" umbrella.  Defendants Lion's Share & Associates, Inc. ("LS Associates"),

Lionsshare Tax Services, LLC ("LS Tax"), and Lion's Share Financial of East Cobb, Inc. ("LS Financial") (collectively "Lion's Share") are all involved in Kelly's fraudulent scheme.

2.     Since at least 2014, Kelly, through Lion's Share, raised at least $1,000,000 from at least 12 investors, promising that he would invest the funds in a variety of investment vehicles, such as CDs, private placements and real estate funds.

3.     Rather than investing the money, Kelly stole it and spent his victims' money for things like Super Bowl tickets, luxury vacations and cash withdrawals.

4.     Many of Kelly's victims are elderly retirees, and his victims include widows, veterans and people with disabilities.

5.     Kelly treats Lion's Share as his personal piggy bank, and he has transferred hundreds of thousands of dollars of investor money to bank accounts he controls to support his lifestyle.  He has also withdrawn large quantities of investor money in cash throughout the course of the scheme, and the disposition of those funds is unknown.

6.     Emergency relief is critical in this case.  Kelly has continued to steal money from his victims even after having been interviewed by representatives of

the SEC's Office of Compliance Inspections and Examinations and then stole even more money after having received a subpoena from the SEC's Division of Enforcement.

## VIOLATIONS

7.    The Defendants have engaged in acts or practices that violated, or aided and abetted violations of Sections 17(a)(1), 17(a)(2), and 17(a)(3) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77q(a)(1), 77q(a)(2), and 77q(a)(3)], Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and subsections (a), (b), and (c) of Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5 (a), (b), and (c)] and , Sections 206(1) and (2) of the Investment Advisers Act ("Advisers Act") of 1940 [15 U.S.C. § 80b-6].  Unless restrained and enjoined by this Court, defendants will continue to engage in acts and practices that violate and or aid and abet violations of these provisions.

## JURISDICTION AND VENUE

8.    The Commission brings this action pursuant to Sections 20 and 22 of the Securities Act [15 U.S.C. §§ 77t and 77v], Sections 21(d) and 21(e) of the Exchange Act [15 U.S.C. §§ 78u(d) and 78u(e)] and Sections 209(d) and 209(e) of

the Advisers Act [15 U.S.C. §§ 80b-9(b) and (d)] to enjoin Defendants from engaging in the transactions, acts, practices, and courses of business alleged in this complaint, and transactions, acts, practices, and courses of business of similar purport and object, for civil penalties and for other equitable relief.

9.    This Court has jurisdiction over this action pursuant to Section 22 of the Securities Act [15 U.S.C. § 77v], Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78aa], and Section 214 of the Advisers Act [15 U.S.C. § 80b-14(a)].

10.    Defendants, directly and indirectly, made use of the mails, and the means and instrumentalities of interstate commerce in connection with the transactions, acts, practices, and courses of business alleged in this complaint.

11.    Venue is proper in this Court because certain of the transactions, acts, practices, and courses of business constituting violations of the Securities Act, the Exchange Act and the Advisers Act occurred in the Northern District of Georgia and Defendants reside in this district.

## THE DEFENDANTS

12.    **Sean Kelly (CRD#2294170)**, age 49, is a resident of Marietta, Georgia. He is a registered representative of Center Street Securities, Inc., a registered

broker-dealer of securities.  He is the owner and principal of various entities that operate under the "Lion's Share" umbrella.  Kelly has Series 6, 7, and 63 securities licenses.  Kelly held himself out to clients as both a broker-dealer and an investment adviser.

13.  **Lion's Share Financial of East Cobb, Inc. ("LS Financial")** is a Georgia corporation that was established in 2007.  LS Financial has its principal place of business at 3535 Roswell Road, Suite 1, Marietta, Georgia 30062. Kelly is the CEO, CFO, registered agent and Secretary of LS Financial.  On information and belief, Kelly was at all times the sole owner and operator of LS Financial, and LS Financial is an alter ego of Kelly.

14.  **Lionsshare Tax Services, LLC ("LS Tax")** is a Georgia LLC formed in 2009 that was administratively dissolved in 2016.  Kelly used a bank account in the name of LS Tax in furtherance of his fraudulent scheme from at least January 2017 through the summer of 2018.  On information and belief, Kelly was at all times the sole owner and operator of LS Tax, and LS Tax is an alter ego of Kelly.

15.  **Lion's Share & Associates, Inc. ("LS Associates")** is held out to be an entity by Kelly, but its corporate status is unknown to the Commission.

Since at least summer 2018, Kelly used a bank account in the name of LS Associates in furtherance of his fraudulent scheme.  On information and belief, Kelly was at all times the sole owner and operator of LS Associates, and LS Associates is an alter ego of Kelly.

## THE FRAUDULENT SCHEME

16.   Kelly operates using the "Lion's Share" umbrella, primarily operating through LS Financial.

17.   Kelly has been a stockbroker for at least 18 years.

18.   He has also provided tax planning, insurance brokering and other financial services during that time.

19.   Kelly solicits customers using a variety of techniques, including offering free tax preparation services for veterans and free retirement planning seminars in assisted living facilities.

20.   Many of Kelly's customers are elderly retirees.

21.   Since at least 2014, Kelly has been stealing his customers' investment funds.

22.   The mechanics of the scheme are fairly simple. When Kelly's customers had funds that they desired to invest, he would sometimes have them make the check out to "Lion's Share."

23.   He would then deposit the check into a bank account controlled by him.

24.   Rather than investing the customer's money, Kelly would spend it on things like mortgage payments, Superbowl tickets and luxury vacations.  He would also oftentimes withdraw large sums of cash from ATMs.

25.   For example, Investors A and B are an elderly retired couple.

26.   Investor A is a veteran, and he and his wife met Kelly after he advertised free tax preparation services for veterans.  Shortly thereafter, they began investing their retirement savings through Kelly.

27.   Beginning in 2014, Investors A and B provided Kelly with checks made out to Lion's Share worth hundreds of thousands of dollars for the purpose of being invested.

28.   Kelly told Investors A and B that the money was invested in a variety of private placements, annuities, investment funds and real estate investment trusts.

29.   In fact, Kelly spent most of the money he received from Investors A and B for his own personal use.

30.   Kelly provided Investors A and B with fabricated statements purporting to come from the companies in which Investors A and B believed they were investing.

31.   Kelly also provided Investors A and B with fabricated portfolio summaries showing investment values and returns for investments that had not been made.

32.   Kelly wrote checks to Investors A and B that he told them represented returns on investments they believed they owned.

33.   Kelly later deposited checks directly into Investors A's and B's bank account that he also told them came from returns on investments they believed they owned.

34.   In fact, the "returns" were paid from the proceeds of investment checks written by other victims of Kelly.

35.   Kelly solicited and received a $20,000 check made out to Lion's Share from Investors A and B in September 2018.  He told investors A and B that the money would be invested in a real estate investment fund.

36. By that time, Kelly was aware of the Commission's investigation that led to the filing of this action. Nevertheless, Kelly did not invest the $20,000 as he represented that he would.

37. The real estate investment trust with which the $20,000 should have been invested has no record of any investment by Investors A and B.

38. Several other companies in which Investors A and B believed they own investments have no record of their purported investments.

39. Investors C and D are a retired couple. In the fall of 2017, at Kelly's suggestion, they cashed in an annuity and provided two checks totaling $25,000 to Kelly. The checks were made out to "Lion's Share."

40. Kelly told Investors C and D that he would invest the $25,000.

41. Kelly deposited the checks in a bank account in the name of LS Tax that he controlled.

42. He did not invest the money, but instead he spent it for his own purposes.

43. At a meeting in August 2018 with Investors C and D, Kelly provided them with a "portfolio summary" showing their investments. The portfolio

summary did not reflect the $25,000 they had given to Kelly nearly a year earlier.

44.  At that time, when questioned, Kelly handwrote "+25,000" on the bottom of their portfolio summary and claimed that he was holding the money until a suitable investment could be identified.

45.  Investor E is the retired manager of an assisted living facility.

46.  Investor E has limited retirement savings.

47.  Investor E received a large settlement from a lawsuit alleging that she took a defective drug that caused her to suffer and undergo treatment for cancer.

48.  In total, Investor E received close to $100,000 from the settlement.

49.  In a series of checks made out to "Lion's Share," Investor E provided Kelly $98,000 to invest.

50.  Kelly deposited Investor E's checks into an account in the name of LS Tax that he controlled.

51.  Kelly told Investor E that he would invest the money he received from Investor E.

52.   Investor E trusted Kelly to invest the money in whatever investments he believed were in her best interest.

53.   Kelly spent Investor E's money for his personal expenses rather than investing it.

54.   Investor F has invested a large portion of his retirement savings with Kelly and Lion's Share.

55.   In August 2018, Investor F gave Kelly a check for $5,000 made out to "Lion's Share."  Kelly told Investor F that he would deposit the $5,000 into Investor F's brokerage account for subsequent investing.

56.   Kelly deposited the check into a bank account in the name of LS Associates that is controlled by him.

57.   Kelly did not deposit the $5,000 into Investor F's brokerage account.

58.   On information and belief, Kelly spent Investor F's $5,000 for his own purposes.

59.   Although the full extent of Kelly's fraudulent scheme is unknown to the SEC at this time, many other checks that appear to be from investors were deposited into the LS Tax account and LS Associates account and spent by Kelly.

60.   Some of the checks from Kelly's customers appear on their face to have been for the purpose of investing.  For example, Kelly deposited a check from a customer's closed out 401(k) account into the LS Tax account.  He also deposited customer checks that had things such as "for CD" and "for invest" written in the memo line into that account.

61.   On information and belief, Kelly has misappropriated more than $1,000,000 from his customers over the past four years.

62.   The Commission staff subpoenaed Kelly for testimony during the investigation that led to this action.  Kelly's testimony was scheduled for October 24, 2018.

63.   During a phone call with the Commission's lead investigator two days before the scheduled testimony, Kelly affirmed that he intended to testify at the scheduled time and stated that he would "come clean."  Kelly did not show up for his scheduled testimony.

## COUNT I—FRAUD
### Violations of Section 17(a)(1) of the
### Securities Act[15 U.S.C. § 77q(a)(1)]

64.   Paragraphs 1 through 63 are hereby realleged and incorporated herein by reference.

65.   Between at least 2014 and the present, Defendants Kelly and LS Financial, in the offer and sale of the securities described herein, by the use of means and instruments of transportation and communication in interstate commerce and by use of the mails, directly and indirectly, employed devices, schemes and artifices to defraud purchasers of such securities, all as more particularly described above.

66.   Defendants Kelly and LS Financial knowingly, intentionally, and/or recklessly engaged in the aforementioned devices, schemes and artifices to defraud.

67.   While engaging in the course of conduct described above, Defendants Kelly and LS Financial acted with scienter, that is, with an intent to deceive, manipulate or defraud or with a severe reckless disregard for the truth.

68.   By reason of the foregoing, Defendants Kelly and LS Financial, directly and indirectly, have violated and, unless enjoined, will continue to violate Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)].

## COUNT II—FRAUD

### Violations of Sections 17(a)(2) and 17(a)(3) of the
### Securities Act [15 U.S.C. §§ 77q(a)(2) and 77q(a)(3)]

69.   Paragraphs 1 through 63 are hereby realleged and incorporated herein by reference.

70.   Between at least 2014 and the present, Defendants Kelly and LS Financial, in the offer and sale of the securities described herein, by use of means and instruments of transportation and communication in interstate commerce and by use of the mails, directly and indirectly:

a.   obtained money and property by means of untrue statements of material fact and omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

b.   engaged in transactions, practices and courses of business which would and did operate as a fraud and deceit upon the purchasers of such securities; all as more particularly described above.

71.   By reason of the foregoing, Defendants Kelly and LS Financial, directly and indirectly, have violated and, unless enjoined, will continue to violate Sections 17(a)(2) and 17(a)(3) of the Securities Act [15 U.S.C. §§ 77q(a)(2) and 77q(a)(3)].

-14-

### COUNT III—FRAUD
**Violations of Section 10(b) of the Exchange Act**
**[15 U.S.C. § 78j(b)]and Sections (a), (b), and (c) of**
**Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5 (a), (b), and (c)]**

72.   Paragraphs 1 through 63 are hereby re-alleged and are incorporated herein by reference.

73.   Between at least 2014 and the present, Defendants Kelly and LS Financial, in connection with the purchase and sale of securities described herein, by the use of the means and instrumentalities of interstate commerce and by use of the mails, directly and indirectly:

a.   employed devices, schemes, and artifices to defraud;

b.   made untrue statements of material fact and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

c.   engaged in acts, practices, and courses of business which would and did operate as a fraud and deceit upon the purchasers of such securities;

all as more particularly described above.

74.   Defendants Kelly and LS Financial knowingly, intentionally, and/or recklessly engaged in the aforementioned devices, schemes and artifices to

defraud, made untrue statements of material facts and omitted to state material

facts, and engaged in fraudulent acts, practices and courses of business.  In

engaging in such conduct,  Kelly and LS Financial acted with scienter, that is, with

an intent to deceive, manipulate or defraud or with a severe reckless disregard for

the truth.

75.   By reason of the foregoing, Defendants Kelly and LS Financial, directly

and indirectly, have violated and, unless enjoined, will continue to violate Section

10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Sections (a), (b), and (c) of

Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5(a), (b), and (c)].

### COUNT IV—FRAUD
### Violations of Sections 206(1) of the
### Advisers Act [15 U.S.C. §§ 80b-6(1)]

76. The Commission realleges paragraphs 1 through 63 above.

77. From at least 2014 through the present, Defendant Kelly, acting as an

unregistered investment adviser, used the mails and the means and

instrumentalities of interstate commerce, directly and indirectly, employed

devices, schemes and artifices to defraud one or more advisory clients and/or

prospective clients.

78.   Defendant Kelly knowingly, intentionally, and/or recklessly engaged in

the aforementioned devices, schemes and artifices to defraud.  In engaging in such conduct, Defendant Kelly acted with scienter, that is, with intent to deceive, manipulate or defraud or with a severe reckless disregard for the truth.

79.  By reason of the foregoing, Defendant Kelly, directly and indirectly, has violated, and, unless enjoined, Defendants will continue to violate Section 206(1) of the Advisers Act [15 U.S.C. § 80b-6(1)].

## COUNT V—FRAUD
### Violations of Section 206(2) of the
### Advisers Act [15 U.S.C. § 80b-6(2)]

80.  Paragraphs 1 through 63 are hereby realleged and are incorporated herein by reference.

81.  From at least 2014 through the present, Defendant Kelly, acting as an unregistered investment adviser, by the use of the mails and the means and instrumentalities of interstate commerce, directly and indirectly, engaged in transactions, practices, and courses of business which would and did operate as a fraud and deceit on one or more advisory clients and/or prospective clients.

82.  By reason of the foregoing, Defendant Kelly, directly and indirectly, has violated and, unless enjoined, will continue to violate Section 206(2) of the Advisers Act [15 U.S.C. § 80b-6(2)].

## COUNT VI—AIDING AND ABETTING FRAUD

83.  The Commission realleges paragraphs 1 through 82 above.

84.  Defendants LS Tax and LS Associates substantially assisted the violations set forth in Counts I through V above, by, among other things, planning, facilitating and/or directing the misappropriation of investor funds through bank accounts they controlled.

85.  LS Tax and LS Associates knew the true purpose of the deposits and withdrawals from their bank accounts and knew that the misappropriation had not been disclosed to investors.

86.  As a result of the conduct described above, LS Tax and LS Associates aided and abetted the violations set forth in Counts I through V above.

### PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully prays for:

### I.

A temporary restraining order, preliminary and permanent injunctions enjoining Defendants, their officers, agents, servants, employees, and attorneys from violating, directly or indirectly, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]; Sections

17(a)(1), 17(a)(2) and 17(a)(3) of the Securities Act [15 U.S.C. § 77q(a)]; and Sections 206(1) and (2) of the Advisers Act [15 U.S.C. § 80b-6].

## II.

An order requiring an accounting by Defendants of the use of proceeds of the fraudulent conduct described in this Complaint and the disgorgement by Defendants of all ill-gotten gains or unjust enrichment with prejudgment interest, to effect the remedial purposes of the federal securities laws.

## III.

An order pursuant to Section 21(d) of the Exchange Act [15 U.S.C. §78u(d)] and Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] imposing civil penalties against Defendants.

## IV.

An order freezing the assets of Defendants pending further order of the Court and requiring Kelly to surrender his passport.

## V.

An order preventing Defendants from destroying or concealing documents until further order of this Court.

## VI.

Such other and further relief as this Court may deem just, equitable, and appropriate in connection with the enforcement of the federal securities laws and for the protection of investors.

### JURY TRIAL DEMAND

The Commission hereby demands a trial by jury as to all issues that may be so tried.

This 25th day of October, 2018.

Respectfully submitted,

M. Graham Loomis
Regional Trial Counsel
Georgia Bar No. 457868
loomism@sec.gov

/s/Joshua A. Mayes
Joshua A. Mayes
Senior Trial Counsel
Georgia Bar No. 143107
mayesj@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission

950 East Paces Ferry Road, NE, Suite 900
Atlanta, GA 30326
Tel:(404) 842-7600
Facsimile:  (404) 842-7679